# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

STEVEN BAKER,                    )
                                 )
                                 )
            Plaintiff,           )
                                 )
v.                               )        No.  05-CV-47-SAJ
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social Security  )
Administration,                  )
                                 )
            Defendant.           )

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2]  Plaintiff asserts that the Commissioner erred because (1) the AJL failed to properly evaluate Plaintiff's residual functional capacity ("RFC") at Step Four, and (2) the ALJ failed to conduct a proper credibility analysis with regard to Plaintiff's subjective complaints of pain.  For the reasons discussed below, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born August 30, 1958. [R. at 50].  Plaintiff indicated that he was unable to work after the injuries he received in a 2000 car wreck, and injuries from falling off of a

---

[1]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2]   Administrative Law Judge Richard J. Kallsnick (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated August 18, 2004.  [R. at 10 - 21].  Plaintiff appealed the decision by the ALJ to the Appeals Council.  The Appeals Council declined Plaintiff's request for review on December 27, 2004.  [R. at 3].

roof.  Plaintiff noted that his back hurts when he lifts items and that his shoulder pops out of "joint."  [R. at 58].

In his disability report, when answering the question requesting that Plaintiff describe what he does on an average day, Plaintiff wrote "nothing."  [R. at 67].  Plaintiff noted that he was unable to work because he could not lift things.  [R. at 67].  Plaintiff wrote that he sleeps for about three to four hours each night because he experiences a lot of pain.  [R. at 67].  Plaintiff noted that he needs help cooking and washing.  [R. at 68].  Plaintiff noted that he shopped for food twice each month, but that he needed assistance.  [R. at 69]. Plaintiff watches "The Price is Right" during the morning.  [R. at 70].  Plaintiff plays chess twice a week for "hours."  [R. at 70].

On his medications list, Plaintiff noted that Zozion was prescribed for him on June 8, 2004, for his pain by an Emergency Room doctor.  [R. at 84].

Plaintiff went to Saint Francis Hospital complaining of right shoulder and neck pain on January 7, 2003.  [R. at 93].  Plaintiff reported tripping and landing on his right shoulder. [R. at 93].  Records dated January 7, 2003, of Plaintiff's right shoulder indicated normal mineralization of the shoulder with degenerative change in the glenohumeral joint and impaction of the glenoid.  The doctor noted no evidence of dislocation.  [R. at 87].  Records dated January 7, 2003, of Plaintiff's cervical spine indicated vertebral body heights were well maintained.  Degenerative disk disease was noted at C4-C5 and C5-C6.  [R. at 88].

Plaintiff was examined January 14, 2003.  [R. at 104].  Physical exam indicated a tender shoulder that could forward flex to 100 degrees and abduct to 120 degrees. Sensation was normal.  [R. at 104].  The doctor's impression was right shoulder

-- 2 --

osteoarthritis and right shoulder glenoid fracture.  The doctor recommended a sling and re-evaluation in four weeks.  [R. at 104].

Plaintiff was evaluated February 11, 2003.  [R. at 101].  Plaintiff had been injured five weeks previously and had a glenoid fracture of his shoulder on a CT scan.  [R. at 101].  Plaintiff indicated that he could not recall dislocating his shoulder until an injury on a work site one year previously.  [R. at 101].  Since that time, Plaintiff indicated that his shoulder had popped in and out about two or three times.  [R. at 101].  The doctor noted that Plaintiff strongly wanted to return to light duty work.  The doctor noted that his believe was that light duty work was fine.  [R. at 101].  Plaintiff was to avoid the dislocation position.  [R. at 102].

Progress reports dated April 15, 2003, indicate Plaintiff returned and stated his shoulder pain was not tolerable and that Plaintiff stated he was unable to hold a regular job.  [R. at 98].  On exam, Plaintiff went to 150 degrees of forward flexion but any abduction caused anxiety.  [R. at 98].  Plaintiff's doctor recommended arthroscopy to evaluate Plaintiff's shoulder under anesthesia.  [R. at 98].  Plaintiff's physician completed a "statement of condition" dated April 15, 2003, requesting that Plaintiff be excused from participation for four months.  [R. at 99].

A Residual Physical Functional Capacity assessment dated June 14, 2003, indicates Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk six hours in an eight hour day and sit six hours in an eight hour day.  [R. at 107, 112].  The reviewer noted that x-rays indicated degenerative disc disease and that Plaintiff had been released by his training physician to return to light duty work.  [R. at 107].  Plaintiff should be

restricted to no reaching overhead with his right arm, but had no limitation in his left arm. [R. at 108].

On September 2, 2003, Plaintiff reported having a dislocation about one time each week.  [R. at 120].

On December 8, 2003, Plaintiff's doctor noted that Plaintiff had not recently dislocated his shoulder but was anxious about it.  He observed that Plaintiff "has learned to work around it, but cannot do any manual labor at this point."  [R. at 117].

On March 29, 2004, Plaintiff's doctor noted that Plaintiff reported trouble with his right shoulder.  Plaintiff's doctor noted that Plaintiff needed surgery but would not set the date until after he heard about his pending social security disability.  Plaintiff's doctor noted that he believed Plaintiff "is unable to do physical work and will need to be off of work for 12 weeks after surgery and then should be able to be employable/trainable after that."  [R. at 115].

On June 8, 2004, Plaintiff's right shoulder reportedly "popped out of place.  [R. at 124].  Plaintiff was placed in a sling for two days and was then to slowly start his range-of-motion exercises.  [R. at 126].

Plaintiff testified at a hearing before an ALJ on July 22, 2004.  [R. at 130].  Plaintiff was 45 years old at the time of the hearing before the ALJ.  [R. at 136].

According to Plaintiff, the last time that he worked was in March 2003 at Flemings Warehouse as a janitor in Broken Arrow.  Plaintiff stated that the day after he started work the building closed and he did not work after that.  [R. at 137].  Prior to that, Plaintiff worked for two weeks in 2002 for a temporary service.  [R. at 138].

-- 4 --

According to Plaintiff, he was told that he needed surgery, but he cannot afford the surgery.  [R. at 141].  Plaintiff indicated that Dr. Gurley told him that he should not work because his shoulder was "shot."  [R. at 142].  Plaintiff testified that he experiences daily pain.  [R. at 142].  Plaintiff indicated that sometimes in the morning his arm "locks up."  [R. at 142-43].  Plaintiff has to relax his arm or put heat on it.  [R. at 143].  According to Plaintiff, if he is required to lift anything heavier than five pounds his shoulder pops out.  [R. at 146].  Plaintiff then waits until it pops back in on its own which takes fifteen minutes to one hour.  [R. at 148].  Plaintiff testified that it normally pops out on him at least once each day.  [R. at 149].

Plaintiff has no difficulty sitting or walking.  [R. at 149-50]. Plaintiff noted that whenever he has problems he goes to Dr. Gurley.  [R. at 151].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

-- 5 --

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/]   Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

## III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had an impairment to his right shoulder.  The ALJ determined that Plaintiff could perform light work permitting Plaintiff to lift or carry 20 pounds occasionally and ten pounds frequently; stand or walk six hours in an eight hour day; and sit six hours in an eighth our day.  [R. at 16].  The ALJ found that Plaintiff could return to his past relevant work as a fast food worker (Step Four).  Alternatively, the ALJ concluded, based on the testimony of a vocational expert that Plaintiff was not disabled at Step Five of the sequential evaluation.  [R. at 18].

---

[4/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

# IV.  REVIEW

**STEP FOUR – RFC EVALUATION**

Plaintiff asserts that the ALJ improperly determined his RFC by concluding that Plaintiff's RFC was greater than Plaintiff's actual abilities.  As support for this argument, Plaintiff asserts that the ALJ failed to properly weigh the opinions of Plaintiff's treating physician.  Plaintiff notes that Dr. Gurley noted that Plaintiff could return to light work duty if Plaintiff avoided the dislocation position.  Plaintiff notes that on April 15, 2003, he complained of additional shoulder dislocations, and surgery plans were made for Plaintiff.  In addition, Dr. Gurley signed a form exempting Plaintiff from participating in an employment program.  On December 8, Plaintiff reported being able to "work around" the dislocations, and Dr. Gurley noted Plaintiff was not capable of performing any manual labor.  Dr. Gurley additionally indicated Plaintiff was not able to do physical work.  Plaintiff asserts that the ALJ ignores the reports by Dr. Gurley that Plaintiff is unable to do work and the exemptions signed by Dr. Gurley for Plaintiff not to complete an employment program.

The Court cannot conclude that the interpretation of the records urged by Plaintiff is the only permissible interpretation.  The record is also entirely consistent with the ALJ's finding that Plaintiff's treating physician concluded Plaintiff could perform light work as long as Plaintiff did not affect his shoulder, but that Plaintiff was unable to perform "manual labor."  The ALJ summarized the medical records from Dr. Gurley.  With regard to Dr. Gurley, the ALJ concluded that "Dr. Gurley opined that he was not able to perform physical work but that he could perform light work as long as he avoided the dislocation position." [R. at 18].    The ALJ's finding is supported by substantial evidence.

-- 8 --

On February 11, 2003, Plaintiff's doctor noted that he believed it was fine that Plaintiff perform light duty work.  [R. at 101].  Plaintiff was to avoid the dislocation position.  [R. at 102].  On April 15, 2003, Plaintiff's doctor recommended arthroscopy for Plaintiff's shoulder.  [R. at 98].  Plaintiff's physician also completed a "statement of condition" dated April 15, 2003, requesting that Plaintiff be excused from participation in the "employment program" for four months.  [R. at 99].  On December 8, 2003, Plaintiff's doctor noted that Plaintiff had not recently dislocated his shoulder.  He observed that Plaintiff "has learned to work around it, but cannot do any manual labor at this point."  [R. at 117].  On March 29, 2004, Plaintiff's doctor noted that Plaintiff needed surgery but would not set the date until after he heard about his pending social security disability.  Plaintiff's doctor noted that he believed Plaintiff "is unable to do physical work and will need to be off of work for 12 weeks after surgery and then should be able to be employable/trainable after that."  [R. at 115].

Plaintiff's doctor never retracts the statement that Plaintiff is able to perform light work if Plaintiff avoids the "dislocation" position.  Plaintiff's doctor focuses on Plaintiff's inability to do "physical work" and "manual labor."  Although Plaintiff's doctor does not further elaborate, an inability to do physical or manual labor is not automatically inconsistent with the ALJ's conclusion that Plaintiff can perform light work activity.  The various opinions of the treating physicians do not appear inconsistent with the conclusion reached by the ALJ.  The Court finds that the ALJ's decision with regard to Plaintiff's RFC is supported by substantial evidence.

## PLAINTIFF'S CREDIBILITY

Plaintiff asserts that the ALJ improperly evaluated Plaintiff's credibility and relied solely on boilerplate reasons in discounting Plaintiff's complaints.  Plaintiff notes that Dr.

Gurley never mentioned that Plaintiff exaggerated his complaints and maintained that Plaintiff was unable to work.  Plaintiff additionally notes that the failure to afford surgery is insufficient as a reason to discount Plaintiff's complaints.

The legal standards for evaluating pain are outlined in 20 C.F.R. §§ 404.1529 and 416.929, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  First, the asserted pain-producing impairment must be supported by objective medical evidence.  *Id.* at 163.  Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain.  "The impairment or abnormality must be one which 'could reasonably be expected to produce' the alleged pain."  *Id.*  Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164.  In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991).  *See also Luna*, 834 F.2d at 165 ("For example, we have noted a claimant's persistent attempts to find relief for his pain and

his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems.  The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In evaluating Plaintiff's credibility, the ALJ noted that Plaintiff's asserted symptoms were disproportionate in comparison to the usual expected severity of his condition.  [R. at 17].  The ALJ noted that Plaintiff's description of his limitations appeared implausible.  [R. at 17].  The ALJ observed that Plaintiff's complaints were not substantiated by the file.  [R. at 17-18].  In addition, the ALJ made general conclusions with regard to Plaintiff not seeking surgery although Plaintiff stated Plaintiff was unable to afford surgery.

The majority of the ALJ's findings with regard to Plaintiff's credibility address the nexus element discussed in *Luna*.  Generally, the ALJ's discussion on credibility is directed more towards the medical link to substantiate Plaintiff's complaints, and the ALJ provides no specific references to the record.  Furthermore, the ALJ never discusses the other factors generally referenced by the courts – that is, a claimant's medications (in this case very limited), frequent trips to the doctor to seek relief (again, in this case very limited doctor contacts), conflicts with the record (able to play chess for hours).  The ALJ's discussion of Plaintiff's credibility is simply not sufficient.  On remand, the ALJ should discuss the factors discussed in *Luna* and its progeny.

Dated this 10th day of February 2006

Sam A. Joyner
United States Magistrate Judge

-- 11 --